Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YASHAR MAMEGHAN,<br><br>    Plaintiff,<br><br>    v.<br><br>SILVERBOW RESOURCES, INC., MARCUS C. ROWLAND, MICHAEL DUGINSKI, GABRIEL L. ELLISOR, DAVID GEENBERG, CHRISTOPH O. MAJESKE, CHARLES W. WAMPLER, and SEAN C. WOOLVERTON,<br><br>    Defendants. | Case No:<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Yashar Mameghan ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.  This is an action against SilverBow Resources, Inc. ("SilverBow" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their

1

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of SilverBow and Sundance Energy, Inc. and certain affiliated entities (collectively, "Sundance").

2. On May 9, 2022, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

3. The Proxy Statement, which recommends that SilverBow shareholders vote in favor of, among other things, the issuance of SilverBow common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (i) SilverBow's, Sundance's, and the combined company's financial projections; (ii) the financial analyses performed by SilverBow's financial advisor, Barclays Capital Inc. ("Barclays"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Barclays; and (iv) potential conflicts of interest involving Company insiders.

4. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Proposed Transaction and Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the June 21, 2022 shareholder vote on the Stock Issuance.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9. Plaintiff is, and has been at all relevant times hereto, an owner of SilverBow common stock.

10. Defendant SilverBow is an oil and gas company that acquires and develops assets in the Eagle Ford shale and Austin Chalk located in South Texas. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "SBOW."

11. Defendant Marcus C. Rowland ("Rowland") is Chairman of the Board of the Company.

12. Defendant Michael Duginski ("Duginski") is a director of the Company.

13. Defendant Gabriel L. Ellisor ("Ellisor") is a director of the Company.

14. Defendant David Geenberg ("Geenberg") is a director of the Company.

15. Defendant Christoph O. Majeske ("Majeske") is a director of the Company.

16. Defendant Charles W. Wampler ("Wampler") is a director of the Company.

17. Defendant Sean C. Woolverton ("Woolverton") is Chief Executive Officer and a director of the Company.

18. Defendants Rowland, Duginski, Ellisor, Geenberg, Majeske, Wampler, and Woolverton are collectively referred to herein as the "Individual Defendants."

19. Defendants SilverBow and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. On April 14, 2022, SilverBow announced that it had entered into a definitive agreement to acquire substantially all of the assets of Sundance and certain affiliated entities. The press release announcing the Proposed Transaction states, in pertinent part:

> **SilverBow Resources Announces Acquisitions of Sundance Energy and SandPoint Resources**
>
> *Strategic Acquisitions of Liquids-Weighted Assets in Western Eagle Ford Meaningfully Increases Size and Scale*
>
> *Overlapping, Contiguous Acreage Positions Drive Compelling Industrial Logic Accretive to Key Financial & Operational Metrics*
>
> April 14, 2022 09:00 AM Eastern Daylight Time
>
> HOUSTON--(BUSINESS WIRE)--SilverBow Resources, Inc. (NYSE: SBOW) ("SilverBow" or "the Company") announced today it has entered into a definitive agreement to acquire substantially all of the assets of Sundance Energy, Inc. and certain affiliated entities (collectively, "Sundance") for a total purchase price of $354 million and up to $15 million of contingent payments based on future commodity prices. The Sundance transaction, which is expected to close in the third quarter of 2022, has been unanimously approved by the Boards of Directors of both companies. The closing of the transaction is subject to SilverBow shareholder approval and satisfaction or waiver of customary closing conditions.

SilverBow also announced today that it has entered into a definitive agreement to acquire certain assets from SandPoint Operating, LLC, a subsidiary of SandPoint Resources, LLC, (collectively, "SandPoint") for a total purchase price of $71 million. The oil and gas assets target the Eagle Ford and Olmos formations in La Salle and McMullen counties. The SandPoint transaction has been unanimously approved by the Boards of Directors of both companies and is expected to close in the second quarter of 2022, subject to customary closing conditions.

\*   \*   \*

### *SUNDANCE TRANSACTION DETAILS AND FUNDING*

The Sundance transaction has an effective date of May 1, 2022 and is expected to close in the third quarter of 2022. The aggregate purchase price of approximately $354 million consists of $225 million in cash, subject to customary closing adjustments, and 4.1 million shares of SilverBow common stock valued at $129 million based on its 30-day volume weighted average price as of April 8, 2022. Up to an additional $15 million dollars of contingent payments may be payable to Sundance based upon future commodity prices. In addition to customary closing adjustments, SilverBow will benefit from a $16.5 million downward adjustment to cash consideration at close related to the assumption of Sundance's existing hedge book. SilverBow intends to fund the cash portion of the consideration, fees and expenses with cash on hand and borrowings under its revolving credit facility.

### *SANDPOINT TRANSACTION DETAILS AND FUNDING*

The SandPoint acquisition also has an effective date of May 1, 2022 and is expected to close in the second quarter of 2022. The aggregate purchase price of approximately $71 million consists of $31 million in cash, subject to customary closing adjustments, and 1.3 million shares of SilverBow common stock valued at $40 million based on its 30-day volume weighted average price as of April 8, 2022. SilverBow intends to fund the cash portion of the consideration, fees and expenses with cash on hand and borrowings under its revolving credit facility.

\*   \*   \*

### *ADVISORS*

Barclays is serving as financial advisor to SilverBow on the Sundance transaction. Gibson, Dunn & Crutcher, LLP is serving as legal advisor to SilverBow on both transactions.

Piper Sandler & Co. and TD Securities (USA) LLC are serving as financial advisors to Sundance. Kirkland & Ellis LLP is serving as legal advisor to Sundance.

Latham & Watkins, LLP is serving as legal advisor to SandPoint.

***ABOUT SILVERBOW RESOURCES, INC.***

SilverBow Resources, Inc. (NYSE: SBOW) is a Houston-based energy company actively engaged in the exploration, development, and production of oil and gas in the Eagle Ford Shale and Austin Chalk in South Texas. With over 30 years of history operating in South Texas, the Company possesses a significant understanding of regional reservoirs which it leverages to assemble high quality drilling inventory while continuously enhancing its operations to maximize returns on capital invested. For more information, please visit www.sbow.com. Information on the Company's website is not part of this release.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

21. The Proxy Statement omits and/or misrepresents material information concerning: (i) SilverBow's, Sundance's, and the combined company's financial projections; (ii) the financial analyses performed by Barclays in connection with its fairness opinion; (iii) potential conflicts of interest involving Barclays; and (iv) potential conflicts of interest involving Company insiders.

22. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the SilverBow Board; (ii) Reasons for the Transaction; (iii) Opinion of SilverBow's Financial Advisor; and (iv) Unaudited Financial Projections of SilverBow.

23. Unless and until the material misstatements and omissions (referenced below) are remedied before the June 21, 2022 shareholder vote on the Stock Issuance, the Company's shareholders will be forced to make a voting decision on the Stock Issuance without full disclosure of all material information. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek damages resulting from Defendants' misconduct.

   **1. Material Omissions Concerning SilverBow's, Sundance's, and the Combined Company's Financial Projections**

24. The Proxy Statement omits material information concerning SilverBow's,

Sundance's, and the combined company's financial projections.

25. With respect to SilverBow's, Sundance's, and the combined company's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the projections; (2) the net income projections of SilverBow, Sundance, and the combined company; and (3) a reconciliation of all non-GAAP to GAAP metrics.

26. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of SilverBow and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Stock Issuance.

27. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R.

§ 244.100.[1]

28.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Barclays's Analyses

29.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Barclays.

30.     The Proxy Statement provides that, in arriving at its opinion, "Barclays . . . reviewed and analyzed the projected pro forma impact of the Transaction on the future financial performance of SilverBow, including cost savings, operating synergies and other strategic benefits expected by the management of SilverBow to result from a combination of the businesses (the "Expected Synergies")[.]" The Proxy Statement, however, fails to disclose the Expected Synergies.

31.     The Proxy Statement fails to disclose the following concerning Barclays's "*Net Asset Valuation Analysis*": (1) the Sundance Resources Estimates, the SilverBow Resources Estimates and Pro Forma Resources Estimates; (2) the discount rates and multiples used in the analysis; (3) the after-tax general and administrative costs provided by SilverBow management for Sundance, SilverBow and SilverBow Pro Forma; (4) the certain other capital expenditure and cost adjustments provided by SilverBow management for Sundance, SilverBow and SilverBow Pro

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited May 18, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

8

Forma; and (5) the present value of hedges for each of SilverBow, Sundance and SilverBow Pro Forma.

32. With respect to Barclays's "*Selected Comparable Transaction Analysis*" and "*Selected Comparable Company Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each transaction and company Barclays's observed in its analyses.

33. With respect to Barclays's "*Pro Forma Merger Consequences Analysis*," the Proxy Statement fails to disclose: (1) the amount that the pro forma FCF per share for SilverBow Pro Forma would be accretive to the standalone FCF per share for SilverBow for 2022; and (2) the amount that the Pro forma CF per share for SilverBow Pro Forma would be accretive to the standalone CF per share for SilverBow for 2022 and 2023.

34. The Proxy Statement fails to disclose the following concerning Barclay's "*Equity Research Analyst Price Targets Analysis*": (1) the individual price targets observed by Barclays in its analysis; and (2) the sources thereof.

35. The valuation methods, underlying assumptions, and key inputs used by Barclays in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Barclays's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

36. Without the information described above, the Company's shareholders are unable to fully understand Barclays's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction and Stock Issuance. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Barclays

37. The Proxy Statement omits material information concerning potential conflicts of interest involving Barclays.

38. The Proxy Statement provides that "Barclays has performed various . . . financial services for SilverBow in the past, and is likely to perform such services in the future, and has received, and is likely to receive, customary fees for such services."

39. Yet, the Proxy Statement fails to disclose the timing and nature of the past financing services that Barclays and/or its affiliates provided to SilverBow, Sundance, and/or their affiliates, including the amount of compensation Barclays received or expects to receive for providing each service within the past two years of the date of its fairness opinion. *See Ortsman v. Green*, 2007 WL 702475, at *1-2 (Del. Ch. Feb. 28, 2007) (ordering expedited discovery where plaintiff alleged "colorable disclosure claims" concerning omission of information relating to financial advisors' conflicted roles in the deal having attempted to provide financing to buyers, as well as failing to disclose amount of fees received by advisor from the company, buyer, and members of buyer group).

40. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

41. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

42. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

43. The Proxy Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

44. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

11

48. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction and/or Stock Issuance. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

49. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction and Stock Issuance.

50. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

56. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction and Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 18, 2022                                      Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
           zhalper@halpersadeh.com

*Counsel for Plaintiff*